O

# United States District Court
# Central District of California

| | |
|---|---|
| AUDIO-TECHNICA CORP., et al.,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>MUSIC TRIBE COMMERCIAL MY SDN. BHD.,<br><br>　　　　　Defendant. | Case № 2:21-cv-09009-ODW (ASx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [27]** |

## I.　INTRODUCTION

This is a trademark infringement case. Plaintiffs Audio-Technica Corporation and Audio-Technica U.S., Inc. (together, "Audio-Technica") manufacture the AT2020 microphone, an entry-level professional studio microphone. Defendant Music Tribe Commercial MY Sdn. Bhd. ("Music Tribe") introduced a competing microphone, the BX2020, into the United States consumer market. Audio-Technica alleges that Music Tribe's microphone is a knockoff and asserts claims for federal trademark and trade dress infringement along with state common-law and statutory claims for unfair competition. Audio-Technica now moves for a preliminary injunction prohibiting Music Tribe from distributing or selling any more units of its allegedly infringing

microphone pending trial.  (Mot. Prelim. Inj. ("Motion" or "Mot."), ECF Nos. 27–28; *see also* Opp'n, ECF No. 32; Reply, ECF No. 38.)

On March 14, 2022, the Court held a hearing on the Motion.  Having carefully considered the arguments presented at the hearing and in the papers filed in connection with the Motion, the Court now **DENIES** Audio-Technica's Motion.

## II.   BACKGROUND

Audio-Technica developed the AT2020 microphone and introduced it to consumers in 2004.  (Decl. Gary Boss ("Boss Decl.") ¶ 10, ECF No. 30.)  Since then, Audio-Technica has marketed and sold the AT2020 continuously in the United States and elsewhere.  (*Id.*)  The AT2020's design incorporates two vertical bars on either side of the microphone with two circular enclosures near the top and bottom, a small portion of the microphone's mesh protruding above the top circular enclosure, and a threaded adapter with rounded hinges and a tapered bottom containing the microphone's cord port.

The "AT" in the product name stands for Audio-Technica.  (*See id.* ¶¶ 4–5.)  The "2020" has no connection to the product's functionality or release date.  Instead, the first two numbers refer to the Audio-Technica series of which the model is a part (the 50 Series, 40 Series, or 20 Series), and the next two digits are essentially arbitrary.  (*See id.* ¶¶ 5–6.)  The AT2020 is available from the standard retailers microphone consumers would expect, including big-box stores such as Best Buy and online retailers such as Sweetwater and Amazon.com.  (Decl. Kristina S. Azlin ("Azlin Decl.") ¶¶ 3, 25, ECF No. 29; *id.* Exs. 2, 21, ECF Nos. 29-2, 29-21; Boss Decl. ¶ 19.)

The AT2020 typically sells in the United States for $99.  (Boss Decl. ¶¶ 10–11.)  It is widely used in the United States by entry-level and professional content creators, including musicians, video streamers, and podcasters.  (*Id.* ¶ 13.)  Sales of the AT2020 have grown steadily since 2004 and have "skyrocketed" in recent years, due in part to its popularity among those creating content from their own homes or small studios.  (*Id.* ¶¶ 13–14.)  Online reviewers and commentators have variously remarked that the

AT2020 is "iconic," is one of "The Top 10 Best Condenser Microphones on Earth," and is "probably the most famous condenser microphone among home studios and creators in general." (Mot. 5.)

In the summer of 2021, Music Tribe, through its brand Behringer, began advertising its BX2020 microphone. The BX2020 is similar in design and appearance to the AT2020, as follows:

| AT2020 | BX2020 |
|---|---|
| (image of AT2020 microphone) | (image of BX2020 microphone) |

Both the AT2020 and BX2020 are packaged in boxes with minimalist packaging design, containing a photograph of the microphone against a stark white background.

Audio-Technica now asserts the following trademark rights: (1) product design and packaging trade dress rights in the design and packaging of the AT2020; and (2) trademark rights in the name "AT2020." Nothing in the record indicates that either party has a USPTO trademark registration for any of their respective marks used in connection with these microphones.

After this dispute arose, Music Tribe agreed to rename the BX2020 to the BM1. (Azlin Decl. ¶ 29.) It sold only thirty units of the BX2020 in the United States before changing the product name. (Decl. Uli Behringer ("Behringer Decl.") ¶ 5, ECF No. 35.) Moreover, although at some point the BM1 page of Behringer's website displayed a link to a promotional video identifying its microphone as the "BX2020," Music Tribe

has since removed that link from Behringer's website.  (Opp'n 22.)  Music Tribe now sells its microphone under the "BM1" designation exclusively, and it has no intention, regardless of the outcome of this litigation, of using the name "BX2020" in the United States any time in the future.  (Behringer Decl. ¶ 6.)

On November 17, 2021, Audio-Technica brought suit against Music Tribe, setting forth claims for (1) federal trademark infringement, trade dress infringement, and unfair competition (15 U.S.C. § 1125(a)); (2) common law unfair competition; and (3) unfair competition under California law (Cal. Bus. & Prof. Code § 17200).  Audio-Technica moved for a preliminary injunction shortly thereafter.

### III.   LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" courts may grant to preserve the status quo pending trial in order to prevent immediate and irreparable injury.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); Fed. R. Civ. P. 65(a).  To obtain a preliminary injunction, the plaintiff must clearly establish: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm if the preliminary relief is not granted; (3) that the balance of equities tips in his favor; and (4) that the injunction is in the public interest.  *See Winter*, 555 U.S. at 20.  Under 15 U.S.C. § 1116(a) as modified by the Trademark Modernization Act of 2020, a plaintiff seeking an injunction to prevent trademark infringement is entitled to a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits.  *Cisco Sys. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-cv-04272-EJD, 2021 WL 4962661, at *7 (N.D. Cal. July 23, 2021) (quoting Pub. L. No. 116-260 (2020)); *cf. Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989) ("In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted.").

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v.*

*Camenisch*, 451 U.S. 390, 395 (1981). The party moving for the preliminary injunction bears the burden of establishing its need. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1326 (9th Cir. 1994). The moving party must meet this burden with a "clear showing" that the preliminary injunction is warranted. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003). In ruling on an application for preliminary injunction, the Court may consider evidence that would not be admissible at trial. *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) ("A district court may . . . consider hearsay in deciding whether to issue a preliminary injunction.").

## IV.   DISCUSSION

"In the trademark context, 'state common law claims of unfair competition and actions pursuant to the California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act.'" *Alixir Co. v. Qué Onda Beverage, Inc.*, No. 2:20-cv-08368-RGK-RAO, 2021 WL 971057, at *6 (C.D. Cal. Jan. 6, 2021) (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)). Neither party disputes this principle, and their briefs are accordingly focused on the Lanham Act claim. The Court takes its cue from the parties and similarly focuses its analysis on the Lanham Act claim.

Audio-Technica brings its trademark claim against Music Tribe under section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) for trade dress infringement, trademark infringement, and false designation of origin. Although both marks are unregistered, section 43(a) "protects against infringement of unregistered marks and trade dress as well as registered marks." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204–05 (9th Cir. 2000).

Audio-Technica attempts to meet its burden on this motion by showing a likelihood of success on its trade dress claim and its trademark claim. For the following reasons, Audio-Technica fails in this burden.

### A. Trade Dress Infringement

Trade dress refers to "the total image of a product and may include features such as size, shape, color or color combination, texture, graphics, or even particular sales techniques." *Nova Wines, Inc. v. Adler Fels Winery LLC*, 467 F. Supp. 2d 965, 975 (N.D. Cal. 2006) (quoting *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 808 n.13 (9th Cir. 2003)). Here, Audio-Technica asserts trade dress rights in the AT2020's design, which incorporates (1) two vertical bars on either side of the microphone with two circular enclosures near the top and bottom, (2) a small portion of the microphone's mesh protruding above the top circular enclosure, and (3) a threaded adapter with rounded hinges and a tapered bottom containing the microphone's cord port.

Audio-Technica's unregistered trade dress claim requires it to show that its trade dress is (1) nonfunctional, (2) distinctive, and that (3) Music Tribe's use of the trade dress creates a likelihood of consumer confusion. *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1171 (C.D. Cal. 2017) (citing *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)). Audio-Technica makes a weak showing of both distinctiveness and likelihood of confusion.

#### 1. *Distinctiveness*

Trade dress rights can be established in either the product's packaging or the product's design. Product packaging trade dress can be "distinctive" in one of two ways: (1) by being inherently distinctive, or (2) by acquiring secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210–11 (2000). However, product design trade dress can never be inherently distinctive and therefore always requires a showing of secondary meaning. *See id.*

Audio-Technica's primary argument is that it has trade dress rights in the AT2020's distinctive design. Audio-Technica does not argue that the AT2020's design is inherently distinctive; instead, Audio-Technica argues that the AT2020 trade dress has acquired distinctiveness by developing secondary meaning. (Mot. 14). A product design has secondary meaning when "consumers associate the design features with a

particular producer." *Tee Turtle, LLC v. ABmask*, No. CV 21-3572-CBM E(x), 2021 WL 3598747, at *3 (C.D. Cal. Apr. 29, 2021); *see also Samara Bros.*, 529 U.S. at 211 (describing secondary meaning as existing when, "in the minds of the public, the primary significance" of a trade dress "is to identify the source of the product rather than the product itself"). To determine whether a mark has acquired a secondary meaning, the trier of fact considers: "(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005) (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (en banc)).

Here, Audio-Technica's showing that its AT2020 trade dress has a secondary meaning is weak. The canonic way of demonstrating secondary meaning is by conducting a survey. *Levi Strauss & Co.*, 778 F.2d at 1358 ("An expert survey of purchasers can provide the most persuasive evidence on secondary meaning."). To conduct the survey, an expert shows consumers the trade dress in question and asks them if they associate that trade dress with a particular producer. *See id.* The results of the survey can demonstrate that the product has taken on a secondary meaning. Here, Audio-Technica presents no such survey, or anything like it. When, as here, the plaintiff is financially capable of conducting a survey, the failure to do so may allow "an inference that the results of such a survey would be unfavorable." *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998); *Allstate Ins. Co. v. Kia Motors Am., Inc.*, No. CV 16–6108 SJO (AGRx), 2017 WL 6550669, at *15 (C.D. Cal. Dec. 22, 2017).

Instead, Audio-Technica relies on the vague declaration of one of its principals regarding the high volume of AT2020 advertising and sales in the United States since 2004. (Boss Decl. ¶¶ 14–15.) Boss's Supplemental Declaration provides further details

about the volume of sales and advertising for the AT2020. (Suppl. Decl. Gary Boss ("Suppl. Boss Decl.") ¶¶ 3–5, ECF No. 41.) But sales and advertising volume are only two of the factors courts consider, and such data, without more, fails to clearly demonstrate a secondary meaning. Indeed, high sales volume, on its own, means little in the distinctiveness analysis; a manufacturer might generate $100 million in annual revenue selling plain white t-shirts, but selling a large number of plain white t-shirts does nothing to make them any more distinctive. Beyond mere volume, Plaintiff makes no showing of any concrete association in the minds of consumers between the shape and design of the AT2020, on one hand, and Audio-Technica as its manufacturer, on the other hand.

Music Tribe, for its part, presents evidence that casts further doubt on whether Audio-Technica has made the required "clear" showing. Music Tribe presents evidence indicating that there are several microphones on the market that look similar to the AT2020. (Behringer Decl. ¶ 7, Ex. 3.) The design elements of several of these microphones include vertical bars and mesh protruding over the top of the frame, as does the AT2020. Music Tribe's showing that the market is crowded with similar models further confirms that, without direct survey-type evidence establishing a connection in the consumer's mind between the trade dress and the producer, it is unlikely that the AT2020 trade dress has acquired a secondary meaning. *Yellow Cab Co.*, 419 F.3d at 930.

Additionally or alternatively, Audio-Technica argues that the AT2020's product packaging is protected trade dress, but this argument is also unavailing. The foregoing analysis applies in even greater measure to Audio-Technica's contentions regarding the AT2020's packaging. Audio-Technica makes no concrete showing that any microphone consumer associates minimalist packaging with white backgrounds and clean product photos with Audio-Technica in particular. And Music Tribe demonstrates that the electronics market is crowded with products packaged in minimalist packaging

using white backgrounds and clean product photos. (Opp'n 13; Decl. Brian K. Brookey Ex. 2 ("Minimalist Packaging Compendium"), ECF No. 33-2.)

For these reasons, it is unlikely that Audio-Technica will be able to establish that the AT2020's product design or product packaging is distinctive.

### 2. *Likelihood of Confusion*

The Court now turns to whether Audio-Technica clearly demonstrates a likelihood of confusion arising from Music Tribe's use of its trade dress. In the Ninth Circuit, courts apply the eight factors from *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), when determining whether an infringer's product is likely to confuse. These factors are (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* at 348–49. Depending on the nature of the case, certain of these *Sleekcraft* factors may be more or less important, with evidence of actual confusion often being the most important factor. *See, e.g.*, *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1147 (9th Cir. 2011).

Applying these factors to Audio-Technica's asserted right in the product design of the AT2020, these factors rather securely indicate a low likelihood of confusion. First, and most importantly, Audio-Technica presents no evidence of actual confusion. Audio-Technica had the ability to submit confusion surveys demonstrating that consumers were confused about the origin of the two products, but it did not. Moreover, Audio-Technica does not present any other direct evidence of confusion, such as evidence that purchasers of the BX2020 contacted Audio-Technica believing they had purchased an Audio-Technica product.

Instead, Audio-Technica repeatedly and emphatically points to writings by online reviewers and commentators that Audio-Technica argues demonstrate a likelihood of confusion. However, these writings support the opposite conclusion at least as much as

they support Audio-Technica's desired conclusion, if not more so. The online reviewers and commentators variously observe that the BX2020 is a "knockoff" or a "clone" of the AT2020 and that it was an "absolutely shameless" copy. (Mot. 8–11.) These reviews indicate that writers and readers understand very well that the AT2020 and the BX2020 are manufactured by different producers, supporting the absence of confusion. *See JL Beverage Co. v. Beam, Inc.*, 899 F. Supp. 2d 991, 1005 (D. Nev. 2012) (finding evidence of consumers noting the goods look alike showed a lack of confusion, as consumers understood the goods were distinct products). No reviewer was under the impression that the two microphones came from the same manufacturer; instead, they were all well aware that the microphones were made by two different manufacturers, and one of the purposes of the reviews was to describe the differences between the two microphones. For these reasons, the online reviews do not demonstrate a likelihood of confusion.

Music Tribe makes an additional point regarding housemarks that further weakens Audio-Technica's showing of a likelihood of confusion. The few copies of BX2020s sold in the United States all bore the word "Behringer" as a housemark on the side of the microphone. "The consistent use of a housemark can reduce the likelihood of confusion . . . when the housemark is . . . conspicuous . . . and serves to indicate the source of origin to the public." *Charles Schwab & Co. v. Hibernia Bank*, 665 F. Supp. 800, 808 (N.D. Cal. 1987). Although the presence of a housemark alone does not "negate the likelihood of confusion," its presence contributes to a finding that confusion is unlikely. *New Flyer Indus. Canada ULC v. Rugby Aviation, LLC*, 405 F. Supp. 3d 886, 901 (W.D. Wash. 2019).

Audio-Technica argues that the consumers of AT2020s are often entry-level purchasers who are more likely than more experienced purchasers to confuse the AT2020 with the BX2020. (Mot. 17–18.) This argument, however, is grounded in Audio-Technica's unsupported assertion about the types of consumers who purchase

AT2020s and the experiences they may have had. Ultimately, Audio-Technica's argument on this issue is little more than speculation.

Finally, although Audio-Technica makes a relatively strong showing that Music Tribe intended to copy the design of the AT2020, the defendant's intent is ultimately only one factor in the analysis, and here, the overall balance of the factors indicates a very low likelihood of confusion with respect to product design trade dress.

For these reasons, it is rather unlikely that Audio-Technica will successfully establish a likelihood of confusion arising from Music Tribe's use of Audio-Technica's alleged product design trade dress.

For many of these same reasons, Audio-Technica's demonstration of a likelihood of confusion about its product packaging trade dress is even weaker. As stated above, Audio-Technica's product packaging trade dress is a weak mark at best and may not exist at all. And Audio-Technica presents no evidence of consumer confusion based on the similarity of its product packaging to that of the BX2020.

In summary, as to trade dress, it is unlikely Audio-Technica will be able to establish distinctiveness, and it is also unlikely it will be able to establish a likelihood of confusion. These two elements are independent, and a failure of either of them would be a complete bar to recovery for trade dress infringement. The low chances of success on each of these points compounds, such that it is clear that Audio-Technica fails to demonstrate a likelihood of success on the merits. Thus, an injunction directed toward trade dress infringement based on either the AT2020's design or packaging is not appropriate.

**B.   Trademark Infringement**

The second component of Audio-Technica's trademark claim concerns its asserted rights in the unregistered "AT2020" mark. As a preliminary point of clarification, much of the trademark aspect of Audio-Technica's Motion is moot. Music Tribe has stopped marketing and selling its microphone under the "BX2020" designation, now designating it as "BM1." (Behringer Decl. ¶ 6.) And Audio-Technica

presents no evidence that refutes Music Tribe's principal's assertion that it has no plans whatsoever to reintroduce its microphone under the BX2020 designation any time in the future. Audio-Technica therefore lacks standing to pursue an injunction preventing Music Tribe from manufacturing or distributing its microphone under the BX2020 designation, or, alternatively, Audio Technica's request for this injunction in particular is now moot.

Because Music Tribe no longer distributes microphones under the BX2020 mark, the only remaining issue is whether the Court should issue a preliminary injunction compelling Music Tribe to make efforts to recall the already-distributed BX2020 microphones. Preliminarily, the Court notes that Audio-Technica presents no language in its Proposed Order that might achieve this narrower effect. (Proposed Order, ECF No. 27-1.) Substantively, such an injunction would be a mandatory injunction because it would require Music Tribe to take affirmative action to recall any remaining BX2020 units from its downstream retailers. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (defining mandatory injunction as one that "orders a responsible party to take action" (internal quotation marks removed)). District courts should deny mandatory injunctions "unless the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979). "In plain terms, mandatory injunctions should not issue in doubtful cases." *Garcia*, 786 F.3d at 740 (internal quotation marks removed). This is a very doubtful case.

"To establish common law rights in an unregistered mark, a plaintiff must show either (1) that its mark is inherently distinctive, or (2) that the mark has acquired a secondary meaning." *Alixir*, 2021 WL 971057, at *4 (cleaned up). As with its trade dress claim, Audio-Technica does not argue that its AT2020 mark is inherently distinctive. Instead, Audio-Technica argues that the mark has a secondary meaning. (Mot. 20.) The secondary meaning analysis for a trademark is the same as for a trade dress. *Alixir*, 2021 WL 971057, at *4. Here, Audio-Technica fails in its burden of showing its "AT2020" word mark has secondary meaning; it submits no survey

1  suggesting the existence of secondary meaning for "AT2020" and relies on general
2  assertions about sales volume and consumer demographics.
3       Applying the *Sleekcraft* factors to determine whether there is a likelihood of
4  confusion arising from Music Tribe's use of the BX2020 mark, the Court finds Audio-
5  Technica fails in its burden, for the same reasons discussed above in connection with
6  the trade dress claim. There is no evidence of actual confusion, and the evidence
7  submitted suggests that, if anything, consumers understand that the two products are
8  different products made by different manufacturers. The presence of the Behringer
9  housemark on the microphone housing further erodes the possibility that consumers will
10 be confused.
11      Moreover, the two word marks themselves are not particularly similar. Audio-
12 Technica ultimately concedes that it is asserting a trademark in "AT2020" and not
13 "2020." (Reply 10 ("Audio-Technica is obviously claiming 'AT2020' as its trademark."
14 (capitalization modified)).) Thus, the question is not whether "2020" and "2020" are
15 confusingly similar; the question is whether "AT2020" and "BX2020" are confusingly
16 similar, and the answer is "likely not." The distinguishing letters come at the beginning
17 of each mark and are naturally interpreted as referring to the respective manufacturers,
18 Audio-Technica and Behringer. These differences make consumer confusion even less
19 likely. Audio-Technica bears the burden of making a showing sufficient to dispel the
20 Court's doubts regarding the appropriateness of a mandatory injunction. Audio-
21 Technica's showing leaves the Court with substantial doubts regarding the mark itself
22 and the likelihood of confusion.
23      To summarize, a mandatory injunction relating to trademark infringement is not
24 appropriate because Audio-Technica fails to meet the applicable burden, and a
25 prohibitory injunction relating to trademark infringement is not appropriate because
26 Music Tribe is no longer using the mark in question. Thus, the Court will not issue an
27 injunction relating to trademark infringement.
28

## V. CONCLUSION

For the reasons discussed above, Audio-Technica fails in its burden of showing entitlement to a preliminary injunction of any type. The Court therefore **DENIES** Audio-Technica's Motion. (ECF No. 27.)

**IT IS SO ORDERED.**

May 5, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**